## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MARQUELL STEVENS,

      Petitioner,

v.                                    Case No. 8:10-cv-2481-T-30AEP

SECRETARY OF DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Petitioner, a State of Florida inmate proceeding *pro se*, petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 and challenges the validity of his state conviction for first-degree murder.  (Dkt. #1).  Petitioner challenges his conviction on grounds of trial court error, ineffective assistance of counsel, and prosecutorial misconduct.

## I.   PROCEDURAL BACKGROUND

A jury convicted Petitioner of first-degree murder and the state trial judge sentenced him to life imprisonment.  Petitioner appealed.  On August 28, 2002, the state district court of appeal affirmed Petitioner's conviction and sentence in a *per curiam* decision without a written opinion.  (CV Dkt. #10, Ex. 11).  After the denial of his motion for rehearing, Petitioner filed a petition for a writ of certiorari in the United States Supreme Court.  (Dkt. #10, Ex. 15).  The Court denied the petition on February 24, 2003.  (Dkt. #10, Ex. 16).

On or about November 25, 2003, Petitioner, through counsel, filed a state motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850. (Dkt. #10, Ex. 17). The state post-conviction court rejected the motion. (Dkt. #10, Ex. 18). Petitioner appealed. On January 26, 2007, the state district court of appeal reversed and remanded for further proceedings. (Dkt. #10, Ex. 19). *See Stevens v. State*, 947 So. 2d 1227 (Fla. 2d DCA 2007). The state post-conviction court rejected one of Petitioner's grounds and ordered an evidentiary hearing on the remaining four grounds presented in the Rule 3.850 motion. (Dkt. #10, Ex. 23). After the hearing on April 20, 2009, the state post-conviction court rejected the remaining grounds. (Dkt. #10, Ex. 25). Petitioner appealed. On August 13, 2010, the state district court of appeal affirmed the denial of the Rule 3.850 motion in a *per curiam* decision without a written opinion. (Dkt. #10, Ex. 29). The mandate issued on October 8, 2010. (Dkt. #10, Ex. 30).

Petitioner presents in this federal habeas petition sixteen grounds for relief. Respondent does not challenge the timeliness of the petition. Upon review, the petition must be DENIED.

## II.   COGNIZABILITY, EXHAUSTION, AND PROCEDURAL DEFAULT

Before a federal court may grant habeas relief, a federal habeas petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1)(A), (C); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas

petition." *Boerckel*, 526 U.S. at 842.  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted)).  A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt v. Jones*, 348 F.3d 1355, 1358 (11th Cir. 2003).

A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt*, 348 F.3d at 1358-59 (quoting *Boerckel*, 526 U.S. at 845).  To exhaust a claim, a petitioner must present the state court with the particular legal basis for relief in addition to the facts supporting the claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief.  *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

3

**Grounds One, Three, and Five**

In ground one Petitioner contends that his trial counsel rendered ineffective assistance by misleading and coercing Petitioner into testifying at trial.  In ground three Petitioner contends that his trial counsel rendered ineffective assistance by not adequately investigating potential defense witness Erica Tillman.  In ground five Petitioner contends that his trial counsel rendered ineffective assistance by not adequately preserving for appellate review a challenge to the admissibility of evidence of Petitioner's post-traumatic stress disorder.

Petitioner presented the allegations in grounds one, three, and five to the state court in his Rule 3.850 motion.[1]  The state post-conviction court summarily denied the claim presented in ground five and ordered an evidentiary hearing on the remaining claims of the Rule 3.850 motion, including grounds one and three.  Following the hearing, the state post-conviction court denied relief on grounds one and three.  Petitioner appealed.  In his appellate brief Petitioner failed to challenge the denial of the claims presented in grounds one, three, and five of this petition.  This failure results in a procedural default of those grounds for relief.

In Florida, exhaustion of claims raised in a Rule 3.850 motion includes an appeal from the denial of the motion.  *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979).  More specifically, when a Rule 3.850 motion has been denied after an evidentiary hearing, the applicable state procedural rule provides a briefing schedule.  *See* Fla. R. App. P.

---

[1] Grounds one, three, and five of this federal petition are the same as grounds one, three, and five of the state Rule 3.850 motion.

9.141(b)(3)(C).  Submission of a brief without an argument on a particular issue results in a waiver of that issue.  *See Duest v. Dugger*, 555 So.2d 849 (Fla. 1990) ("The purpose of an appellate brief is to present arguments in support of the points on appeal.  Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived.").

Although Petitioner pursued an appeal of the denial of his Rule 3.850 motion, he failed to challenge the denial of the claims presented in grounds one, three, and five of this petition.  Because Petitioner's post-conviction appeal was from a Rule 3.850 order denying relief after an evidentiary hearing, state procedural rules obliged Petitioner to file an appellate brief.  *See* Fla. R. App. P. 9.141.  His appellate counsel's decision to pursue only one claim on appeal (a claim not presented in either grounds one, three, or five) abandoned the remaining claims raised in the underlying Rule 3.850 motion, both those summarily denied and those denied after the evidentiary hearing.  The Eleventh Circuit has recognized the distinction between a state post-conviction appeal after a summary denial and a state post-conviction appeal following an evidentiary hearing:

> Cortes argues that the district court erred by dismissing his § 2254 petition because he exhausted all issues by appealing the denial of his state Rule 3.850 motion.  He argues that he was not required to file an appellate brief when he appealed the denial of the 3.850 motion, and that his decision to file a brief focusing on two of the issues did not render the remaining issues abandoned.
>
> . . . .
>
> In this case, Florida Rule of Appellate Procedure 9.141(b)(2) provides that in appeals from the summary judgment denial of a Rule 3.850 motion without an evidentiary hearing, "[n]o briefs or oral argument shall be required, but any

5

appellant's brief shall be filed within 15 days of the filing of the notice of appeal.  The court may request a response from the appellee before ruling." Fla. R. App. P. 9.141(b)(2)(C).

Cortes's appeal did not follow an evidentiary hearing, and, therefore, he was not required to file an appellate brief.  Furthermore, his decision to do so and to address only some of the issues does not waive the remaining issues raised in his Rule 3.850 motion.  *See Webb v. State*, 757 So.2d 608, 609 (Fla. Dist. Ct. App. 2000).  Therefore, Cortes did exhaust his state remedies prior to filing his § 2254 petition.  In contrast, had Cortes received an evidentiary hearing, his failure to address issues in his appellate brief would constitute a waiver. (footnote omitted).

*Cortes v. Gladish*, 216 Fed. App'x. 897, 898 (11th Cir. 2007) (unpublished).

The state rule requiring submission of an appellate brief bars Petitioner's returning to state court to challenge the denial of his federal claims in a second appeal of the denial of his Rule 3.850 motion.  *See* Fla. R. App. P. 9.141(b)(3)(C).  Petitioner's failure to assert on post-conviction appeal the claims presented in grounds one, three, and five of this federal habeas petition results in the default of these grounds.

Pursuant to the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable."  *Smith v. Jones*, 256 F.3d 1125, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  *See also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the

errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).  In other words, a petitioner must show at least a reasonable probability of a different outcome.  *Henderson*, 353 F.3d at 892; *Crawford  v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96.  "A 'fundamental miscarriage of justice' occurs in an extraordinary case where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892.  This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Petitioner fails to demonstrate cause and prejudice excusing his default.  *Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96.  He neither alleges nor shows that the fundamental miscarriage of justice exception applies.  *Henderson*, 353 F.3d at 892. Because Petitioner fails to proffer specific facts showing an exception to procedural default, grounds one, three, and five of this federal petition are procedurally barred from review.

**Grounds Seven, Eight, Nine, Ten, Eleven, Fourteen, and Fifteen**

In ground seven Petitioner contends that "errors, inaccuracies, misspellings and/or possible omissions" in the trial transcript "tainted" his right to appeal.[2]  In ground eight Petitioner contends that the trial judge erred by excluding evidence of Petitioner's post-traumatic stress disorder in light of the decision in *Mizell v. State*, 773 So. 2d 618 (Fla. 2d DCA 2000).[3]  In ground nine Petitioner contends that the trial judge gave a "misleading and inaccurate" jury instruction  when he told the jury that its duty was "to determine if the defendant has been proved guilty or not in accordance with the law" and that it was the judge's "job to determine what a proper sentence would be" if Petitioner were convicted.  In ground ten Petitioner contends that his trial was tainted by the trial judge's three *ex parte* communications with the jury.  In ground eleven Petitioner contends that the trial judge violated the common law rule that a trial begin *de novo* when a juror becomes incapacitated. In ground fourteen Petitioner contends that the trial judge erred by admitting a letter from Petitioner to Eric Newsome.  In ground fifteen Petitioner contends that the trial judge erred by excluding evidence of the victim's reputation for violence and the victim's prior bad acts.

---

[2]  Petitioner relies upon a state case, *Estopinan v. State*, 710 So. 2d 994 (Fla. 2d DCA 1998), to support his claim, arguing that his "appeal was tainted by transcripts more abysmal than [those] in *Estopinan*."  (Dkt. #1, p. 20). Petitioner cites no specific error in the transcript that he believes supports this ground for relief.

[3]  During trial the prosecution moved to exclude testimony from Dr. Karl Jones that Petitioner suffered from post-traumatic stress disorder "as well as a combination of the effects of possibly taking various medication[s], which had been prescribed to [Petitioner]."  (Dkt. #10, Ex. 5, p. 870-88; Ex. 8, p. 41).  The trial judge did not allow Dr. Jones to testify about post-traumatic stress disorder.  (Dkt. #10, Ex. 5, Vol VI, pp. 888).  In *Mizell*, the state district court of appeal held that evidence of post-traumatic stress disorder "is relevant on the question of self-defense."  *State v. Mizell*, 773 So. 2d 618, 612 (Fla. 2d DCA 2000).  *Mizell* was decided while Petitioner's case was pending on direct appeal.

The state district court of appeal rejected each of these claims on direct appeal. (Dkt. #10, Ex. 11).

To the extent that Petitioner relies only upon his state law arguments presented on direct appeal to support grounds seven, eight, nine, ten, eleven, fourteen, and fifteen, he cannot obtain relief. Federal habeas relief for a person in custody pursuant to the judgment of a state court is available only on the ground that the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). *See also Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993). Grounds seven, eight, nine, ten, eleven, fourteen, and fifteen present no basis for federal habeas corpus relief because none of the grounds present a federal constitutional question or allege the violation of a federal constitutional right. 28 U.S.C. § 2254(a). *See also Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to re-examine state court determinations on state-law questions."). The limitation on federal habeas review to a claim of federal constitutional error applies with equal force when a petition, which actually involves state law issues, is couched in terms of a Fourteenth Amendment due process violation. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976).

To the extent that each of Petitioner's grounds, liberally construed, asserts a federal due process violation, the grounds warrant no relief because they remain unexhausted. Petitioner presented no federal due process claim based on any of the allegations presented

in grounds seven,[4] eight, nine,[5] ten, eleven, fourteen, or fifteen to the state courts.  By failing to present a federal claim to the state courts, Petitioner deprived the state courts of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. at 845.  A federal court cannot grant a Section 2254 petition unless the petitioner has exhausted every available state court remedy.  *Snowden v. Singletary*, 135 F.3d at 735.

---

[4] Appellate counsel submitted on direct appeal a seventy-one page appellate brief asserting eleven grounds for relief that included myriad citations to the trial transcript.  As to ground seven, Petitioner in his appellate brief to the state court argued only that the transcription errors "tainted" his right to appeal but failed to explain how the "taint" actually abridged that right.  In his reply to the Respondent's response, Petitioner argues that he "federalized" ground seven by arguing in state court "that his 'right to appeal has been tainted' by the failure of the State to provide an accurate transcript constituting a departure from the essential requirements of law, which violated 'due process rights' and 'materially prejudiced' Petitioner['s] right to judicial review of his appeal."  (Dkt. #14, p. 5).

Even assuming, *arguendo*, that this statement was sufficient to alert the state court of a federal due process claim, the claim warrants no relief.  A review of the trial transcript shows that, while the transcript is fraught with misspellings and typographical errors, it adequately reflects the trial proceedings.  Petitioner fails to allege that the transcript prevented him from pursuing any meritorious appellate issue or that the transcript precluded a full and fair review by the state district court of appeal.  *See United States v. Cashwell*, 950 F.2d 699, 704 (11th Cir. 1992) ("[S]ubstantial and significant omissions from the verbatim transcript do not mandate a reversal if a suitable alternative method of reporting trial proceedings is provided or the record can be adequately reconstructed to accord effective appellate review.").

[5] As Respondent notes in the response, in arguing the allegations in ground nine in the state court, Petitioner in his appellate brief mentioned due process and cited several United States Supreme Court cases to support his argument.  He did not, however, present a specific substantive federal due process claim based on the allegedly improper jury instruction.  Even construing ground nine liberally and assuming, *arguendo*, that Petitioner asserts a federal due process claim and that the claim is exhausted, Petitioner is not entitled to relief.  He argues that, because the only possible sentence upon conviction for first-degree murder was life imprisonment without parole, the trial judge erred by reading instruction 2.05(5) which advised the jury:  "The [jury's] duty is to determine if the defendant has been proved guilty or not, in accordance with the law.  It is then [the judge's] job to determine what a proper sentence would be if you find that he is guilty."  (Dkt. #10, Ex. 5, Vol. VI, p. 1106).  *See also* Fla. Std. J. Instr. 2.05(5) (West 1998).  Petitioner claims that the mandatory nature of the sentence precludes judicial discretion to determine a "proper sentence."

An error in instructing the jury cannot constitute a basis for federal habeas relief unless the error "so infected the entire trial that the resulting conviction violates due process."  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  *See also Agan v. Vaughn*, 119 F.3d 1538, 1545 (11th Cir. 1997), *cert. denied*, 523 U.S. 1023 (1998) ("A defendant's right to due process is not violated unless an erroneous instruction, when viewed in light of the entire trial, was so misleading as to make the trial unfair.").  Petitioner fails to demonstrate that the state trial court's instruction, viewed in light of the entire trial record, so infected the trial that his first-degree murder conviction violates federal due process standards.  Consequently, this due process claim warrants no federal habeas relief.

Petitioner cannot return to state court to present a federal due process claim because state procedural rules preclude a second direct appeal.  Consequently, a federal due process claim based on the allegations in either grounds seven, eight, nine, ten, eleven, fourteen, or fifteen is procedurally defaulted.  Petitioner fails to demonstrate cause and prejudice excusing his default, and neither alleges nor shows that the fundamental miscarriage of justice exception applies.  *See Smith v. Jones*, 256 F.3d at 1138; *Henderson v. Campbell*, 353 F.3d at 892.  Failure to overcome this default renders grounds seven, eight, nine, ten, eleven, fourteen, and fifteen procedurally barred from federal review.

## Ground Thirteen

Petitioner contends that the prosecutor made improper comments during her opening statement,[6] during her cross-examination of Petitioner[7], and during her rebuttal closing

---

[6] Petitioner challenges the prosecutor's comments:

"I'm gonna [sic] kill the [expletive].  I'm going to kill the [expletive].  I'm going to kill the [expletive].  Members of the jury, let me introduce you to this [expletive].  He has a name and his name is Andre Gaines [the victim]."

. . .

[Petitioner] is not familiar with how to read an autopsy . . . because he doesn't know how to read an autopsy, he thinks he only has to account for two bullets and so he's talking to [another alleged witness] about, "Yeah, I've only got to cover for two bullets."  He didn't read the first three pages of the autopsy that talked about four bullets that he needs to account for. . . .

(Dkt. #1, p. 39).

[7] The prosecutor asked Petitioner on cross-examination about a police report he had made about a fight between himself and the victim on the day before the shooting:

Q:      You wrote ten words about the fight?

A:      I don't recall.

Q:      Selective memory?

(continued...)

argument.[8]  Petitioner challenged on direct appeal the same comments he now challenges in this habeas petition.  (Dkt. #10, Ex. 8, pp. 59-64).  In its appellee brief on direct appeal, the State argued that Petitioner's failure to object at trial to each of the challenged comments or to move for a mistrial[9] resulted in a waiver.  (Dkt. #10, Ex. 9, pp. 47-58).  The state district court of appeal affirmed Petitioner's conviction and sentence in a *per curiam* decision without a written opinion.  (Dkt. #14, Ex. 11).

Generally, before a claim is procedurally barred from federal habeas review, a state court must reject reviewing an incorrectly presented claim.  The fact that a federal habeas

---

[7](...continued)

(Dkt. #10, Ex. 5, Vol. VI, p. 808).  Later during her examination the prosecutor asked Petitioner:

> Q:      Mr. Gaines - - I'm sorry, I apologize.  Mr. Stevens, if you shot [the victim] the way you've tried to describe to this jury, why did you run, like a coward, when it was over with?
>
> . . .
>
> Q:      Mr. Stevens, you had to run because you had to plan your self-defense argument, didn't you?

(Dkt. #10, Ex. 5, Vol. VI, pp. 844-45).

[8]  During closing argument the prosecutor argued:

> Let's get one thing straight:  Marquell Stevens did not sit up here to bare his soul, as the defense puts it; Marquell Stevens sat up here to save his butt or at least attempt to.  He has been planning and plotting some self-defense, any type of argument, something to get him out of this situation . . . .
>
> . . .
>
> [Petitioner's grandmother] wants you to believe she hauls Marquell's butt to Tampa to save him from this supposed crowd . . . . [S]he's trying to save herself from a potential aiding and abetting somebody getting them high jacked [sic] out of here.

(Dkt. #10, Ex. 5, Vol. VII, pp. 1063-64, 1075).

[9]  According to Florida procedure, to preserve a claim for appeal based on improper argument counsel must both timely object and request a mistrial.  *Cole v. State*, 866 So. 2d 761, 763 (Fla. 1st DCA 2004) (citing *Nixon v. State*, 572 So. 2d 1336, 1340 (Fla. 1990)).  "As a general rule, the failure to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review."  *Card v. State*, 803 So. 2d 613, 622 (Fla. 2001).

petitioner failed to abide by a state procedural rule does not, standing alone, prevent a federal court from reaching the federal claim: "The state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). However, because the state appellate court did not issue a written opinion on direct appeal, the record fails to contain "a 'plain statement' that [the state court's] decision rests upon adequate and independent state grounds." *Harris v. Reed*, 489 U.S. at 261 (quoting *Michigan v. Long*, 463 U.S. 1032, 1042 (1983)). Notwithstanding, because the State argued procedural default and the state appellate court did not reject the argument, the state appellate court is presumed to have applied the state's procedural default rules. *See Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir.) ("[W]hen a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default.") *cert. denied*, 490 U.S. 1071 (1989); *Nichols v. Wainwright*, 783 F.2d 1540, 1542 (11th Cir. 1986) ("[T]his court may presume, in the absence of any evidence to the contrary, tha[t] an established default rule which was briefed to a state court was applied by that court when it affirmed a conviction without opinion."). Consequently, ground thirteen of this federal petition is procedurally defaulted.

Petitioner fails to demonstrate cause and prejudice excusing his default. *Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. He neither alleges nor shows that the fundamental miscarriage of justice exception applies. *Henderson*, 353 F.3d at 892.

13

Because Petitioner fails to proffer specific facts showing an exception to procedural default, ground thirteen is procedurally barred from review.[10]

## III.   MERITS

Petitioner's remaining claims are exhausted and entitled to a review on the merits.

## Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

---

[10] Even absent the procedural bar, Petitioner is not entitled to relief. To prove a prosecutorial misconduct claim, Petitioner must show that the challenged conduct was both improper and prejudiced his substantial rights. *Sexton v. Howard*, 55 F.3d 1557, 1559 (11th Cir. 1995). An improper prosecutorial remark compels habeas corpus relief only if the remark is so egregious that the proceeding is rendered fundamentally unfair. "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *See also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). *Darden*, 477 U.S. at 181, teaches that the relevant question is whether a prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "[T]he appropriate standard of review in a petition for the writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power." *Donnelly*, at 642. *Accord Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (*en banc*) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."), *cert. denied*, 480 U.S. 911 (1987); *United States v. Young*, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

Taken in the context of the entire trial, the prosecutor's comments, even if improper, were not so egregious as to render the trial fundamentally unfair, nor did the comments infect the trial with such unfairness that the resulting conviction amounts to a denial of due process. *Tucker v. Kemp*, 802 F.2d at 1296. Even assuming that counsel performed deficiently by not objecting or moving for a mistrial based on any of the comments, Petitioner demonstrates neither that an objection would have altered the outcome of the trial nor that counsel would have succeeded on a motion for mistrial based on any particular statement. *See Duest v. State*, 462 So.2d 446, 448 (Fla. 1985).

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. at 694. *See Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law"

encompasses only the holdings of the United States Supreme court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Federal courts must afford due deference to a state court's decision. "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, ____ U.S. ____, 130 S. Ct. 1855, 1866 (2010).

In a *per curiam* decision without a written opinion the state appellate court affirmed Petitioner's conviction and sentence on direct appeal. Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Petitioner's subsequent Rule 3.850 motion to vacate. The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).

Petitioner bears the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption

16

of correctness applies to a finding of fact, but not to a mixed determination of law and fact.

*Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).  The state

court's rejection of Petitioner's post-conviction claims warrants deference in this action.

### Standard for Ineffective Assistance of Counsel claims

*Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of

counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to *Strickland*, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice.

*Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance

claim . . . to address both components of the inquiry if the defendant makes an insufficient

showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to

dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly

presumed to have rendered adequate assistance and made all significant decisions in the

exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  "[A] court

deciding an actual ineffectiveness claim must judge the reasonableness of counsel's

17

challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690.  *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  466 U.S. at 690.

Petitioner must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  466 U.S. at 691-92.  To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91.  Petitioner cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . .  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

18

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

## FACTS[11]

Petitioner and the victim had known one another for several years.  The victim was allegedly angry with Petitioner for setting up the victim's girlfriend with another man.  Early on the morning of January 17, 1999, Petitioner and the victim engaged in a fist fight in which the victim "beat the dickens" out of Petitioner.  Later that morning the victim "trashed" Petitioner's car by smashing the car's windows and sticking a basketball pole through the windshield.  Upon seeing the damage to his car, Petitioner, referring to the victim, stated that he "was going to kill this [expletive]."  Petitioner then acquired a gun from a friend (Eric Newsome) and, minutes later, encountered the victim outside the friend's house.  The unarmed victim, seeing Petitioner with the gun, stated, "please don't shoot me."  Petitioner, without warning, then shot the victim four times,[12] killing him.

---

[11]  This summary of facts derives from Petitioner's brief on direct appeal and the state court record.

[12]  The medical examiner testified that the victim was shot once in the leg, once in the neck, and twice in the back.  (Dkt. #10, Ex. 5, Vol. IV, pp. 456-63).

**Grounds Two and Four**

In ground two Petitioner contends that trial counsel did not adequately investigate witness Victor Perkins ("Perkins") and failed to call Perkins as a witness at trial. Petitioner asserts that Perkins was an eyewitness to the shooting who would have testified both that the victim and his friends had a plan to kill Petitioner and that, immediately before the shooting, the victim and his friends "jumped" Petitioner from behind, placing Petitioner in a chokehold while they were armed with a gun and a butcher knife. Perkins also would have testified that Petitioner shot the victim in self-defense. In ground four Petitioner contends that counsel's failure to adequately investigate Perkins resulted in counsel not discovering physical evidence (i.e., a gun and a knife wielded by the victim and his friends) that would have supported Petitioner's theory of self-defense.

The state post-conviction court rejected these claims in Petitioner's Rule 3.850 motion after an evidentiary hearing:

> The Defendant claims his trial counsel was ineffective for failing to adequately investigate and present as a defense witness Victor Perkins, who was an eyewitness to the shooting in this case. The Defendant contends that Perkins would have testified that the Defendant shot the victim in self-defense and that interviewing him would have led to the discovery of physical evidence (a gun and a knife) supporting this theory.
>
> Though Perkins testified at length at the evidentiary hearing, his version of the altercation between the Defendant and [the] victim varies widely from the testimony the Defendant presented at trial. Specifically, Perkins testified that the victim . . . came around the side of a house and snuck up on the Defendant, who was in the front yard. Perkins also testified that [the victim] had a knife in his hand, he struggled with the Defendant for about a minute (but did not choke the Defendant), and then a gunshot was fired and [the victim] fell to the ground. In contrast, the

Defendant testified at trial that he came up along the side of the house, was standing alone waiting for a friend, and [the victim] came up behind him and started choking him.  He also testified that [the victim] never threatened him with a weapon during the altercation.   Additionally, the Defendant never mentioned during his trial testimony that anyone had witnessed the struggle between him and [the victim].

[Counsel] testified that he was never aware that Perkins was a potential self-defense witness for the Defendant and, based on the testimony Perkins offered at the hearing, would not have called him at trial because his testimony conflicted greatly with the Defendant's own version of events.  Additionally, [the prosecutor] testified that she interviewed Perkins before the Defendant's trial and he told her he had not witnessed the altercation or shooting and never saw [the victim] until after he had been shot. Based on the foregoing, the court finds that Perkins could not have offered credible self-defense testimony for the Defendant and counsel was not ineffective for failing to investigate or present his testimony at trial.  Accordingly, this claim is denied.

(Dkt. #10, Ex. 25, p. 4) (court's record citations omitted).  The state district court of appeal affirmed the denial of relief.

Under Florida law, "the failure to call witnesses can constitute ineffective assistance of counsel if the witness may have been able to cast doubt on the defendant's guilt, and the defendant states in his [post-conviction] motion the witnesses' names and the substance of their testimony, and explains how the omission prejudiced the outcome of the trial." *Marrow v. State*, 715 So.2d 1075 (Fla. 1st DCA 1998).  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (citations omitted).[13]  Tactical

---

[13] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

decisions within the range of reasonable professional competence are not subject to collateral attack unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983).   The reasonableness of counsel's challenged conduct on the facts of the case viewed as of the time of counsel's conduct decides an ineffectiveness claim. *Strickland v. Washington*, 466 U.S. at 690.

Petitioner testified at trial that no one else was in the area where he encountered the victim immediately before the shooting. (Dkt. #10, Ex. 5, Vol. VI, p. 791).  Petitioner further testified on cross-examination that when he shot the victim, the victim had not threatened him with a weapon and that the victim had not pulled out a knife or displayed a gun.  (Dkt. #10, Ex. 5, Vol. VI, p. 825).

During the Rule 3.850 evidentiary hearing Perkins testified on direct examination that he saw Petitioner on the morning of the shooting and that he appeared scared of the victim. Perkins was present when the victim approached Petitioner.  Perkins saw the victim come around the side of the house with a knife in his hand and approach Petitioner from behind. (Dkt. #10, Ex. 24, p. 9).  Perkins saw Petitioner and the victim begin to fight and heard gunshots.  He saw the victim fall to the ground.  (Dkt. #10, Ex. 24, p. 11).  Perkins testified that after the shooting he was incarcerated (on unrelated charges) and would have been available for an interview but neither Petitioner's counsel nor a defense investigator interviewed him or took his deposition.

22

On cross-examination Perkins testified that six people were present when the fight between Petitioner and the victim occurred and that he did not see the victim choke Petitioner.  (Dkt. #10, Ex. 24, pp. 19, 22).  Perkins was unaware that Petitioner testified at trial that no one else was present during the shooting, was unaware that Petitioner testified that the victim did not have a weapon, and was unaware that Petitioner testified that the victim choked him.  (Dkt. #10, Ex. 24, pp. 20-21).

Petitioner testified at the evidentiary hearing both that he knew that Perkins was present at the crime scene and that he told counsel that Perkins could have testified to what happened during the shooting.  Petitioner testified that Perkins knew about the victim's propensity for violence and that if he had known that Perkins could have testified in support of his self-defense theory, Petitioner would not have testified at trial.  (Dkt. #10, Ex. 24, pp. 24-26, 29-30, 41-45).

Counsel testified at the evidentiary hearing that he had never heard of Perkins as having been a potential witness who could have supported Petitioner's theory of self-defense:

> Q:    Now, the defendant has alleged earlier that he told you about Victor Perkins . . . . Is that not true?
>
> A:    I do not recall the name Victor Perkins coming up in association with self-defense.  I do recall that at one point Mr. Stevens had mentioned to me that it had been [the victim] who had come around the house and surprised him.
>
> And as I completed the depositions and as I analyzed the evidence, I pointed out to him that, you know, no one else saw it that way.  No one else saw [the victim] come around, and it didn't - - it wouldn't have made any sense because it was at the back of the Newsome residence where the exchange for the pistol

23

and the car took place, and Mr. Stevens left from there and went around the house.  So, if I had heard that - - what Victor Perkins said, I would have - - I would have had very serious doubt about it and I would have wanted to examine that very thoroughly because it didn't corroborate with anything else I heard.  And even Mr. Stevens just said here a few minutes ago that it was he who walked around the house.

So, I don't recall the name Victor Perkins coming up as a self-defense witness.  I don't recall him coming up as someone who had been there.  I recall a number of names coming up as people who may have been available to talk about [the victim] having a violent propensity.  And the judge essentially disallowed me from presenting most of those witnesses.

Q:     If somebody, the defendant or anybody else, had come and told you Victor Perkins was there and can testify to self-defense, what would you have done?

A:     I would have been all over it.  I put every ounce of effort, every drop of sweat, and everything I had into defending Mr. Stevens.  I never worked harder on any case in my life than that one.  It was very contentious from beginning to end, too.

(Dkt. #10, Ex. 24, pp. 79-81).

Counsel testified on cross-examination:

Q:     You indicated on direct that you don't recall that Victor Perkins might have been a defense witness on self-defense?

A:     Yes, I don't recall that.

Q:     You were aware though that he was listed as a State witness, correct?

A:     There were dozens of witnesses that were listed.  And I read through the police reports very carefully to see what any of them might have had to say.  And there was nothing that I saw regarding Victor Perkins and there was nothing that I recall hearing from Mr. Stevens about Victor Perkins.

. . .

Q:     Do you recognize this document?

24

A:     It looks like the kind of witness disclosure that you get from the State.

Q:     Okay.  And what is the date on that document?

A:     July 9th of 1999.

Q:     Okay.  And is that a document disclosing to you the name of Victor Perkins as a State witness?

A:     Yes.

Q:     Okay.  And do you recall, during the course of your investigation on this case, if you, at any point, interviewed State witness Victor Perkins?

A:     Oh, I know I didn't.

Q:     Okay.  Did you bother to look into whether or not he would be available for an interview?

A:     I never considered that he would be a witness for the defense.  And based on what he said before, I would not have called him because he would have been contrary to what Mr. Stevens had told me and what the other witnesses said.

Q:     Did you - - it would be safe to assume then that you did not, at any point, take his deposition?

A:     No, I did not.

Q:     And so it would be fair to say that what your knowledge of - - in terms of what Victor Perkins might be able to testify to, that that was coming just from [what] the State told you or what the State's police reports told you?

A:     Yes.

Q:     And that you did not do an independent investigation of that?

A:     I don't recall that.

Q:    Okay.  Victor Perkins then would not have been somebody that you talked to
      or investigated regarding whether he could testify to [the victim]'s reputation
      for violence in the community?

A:    No.  Now, I might have done that.  I tried - - I can't remember all the witnesses
      I had listed to do that and I made a big issue about that during the trial.  I
      probably would have called him to do that, although I can't specifically
      remember whether I listed him for that purpose or not.

      But I remember that there was one day in the trial, there was a hiatus in that
      trial that was caused by a juror problem.  And I - - some information came to
      my attention during that hiatus and when that hiatus was over, there were a
      number of witnesses that I intended to call on reputation.  And I don't know
      whether he was one of them or not, but they were denied.

Q:    Would you agree that if you had investigated Victor Perkins as a witness back
      at the time of the trial and learned information consistent with what we heard
      today that that may have changed the theory of defense?

A:    No.

Q:    It could have changed whether or not you would have advised Mr. Stevens to
      testify?

A:    Not at all.

(Dkt. #10, Ex. 24, pp. 92-95).

The prosecutor testified on direct examination at the evidentiary hearing:

Q:    Okay.  Did Perkins ever tell you that he witnessed the shooting himself?

A:    No.  What he did tell me was that he heard shots.

. . .

Q:    And I think what you had said was that the first time he had saw [sic] the
      victim was, at that point, was after he had been shot?

A:    Yes.

26

Q:    Okay.

A:    He led me to believe, based upon my notes and review of this, that EMT was arriving or close in time to about when he went up and saw the deceased.

Q:    Okay.  Did he ever suggest to you that the defendant acted in self-defense?

A:    No.

Q:    Did he suggest to you anything about the victim being armed?

A:    No.

Q:    Was there anything, in your discussion with him, that would have made him a good witness for the defense?

A:    No.

Q:    Do you recall any other evidence that the victim was armed at the time of the shooting?

A:    None.  In fact, I think, if I recall correctly, that the medical personnel got there awfully quick and that it was pointed out, not only [by a witness] across the street [that] the victim [had] his arms up in a like [sic] surrender-type standing as opposed to a defensive type standing. . . . [Eyewitness] Robert Newsome didn't place anything in the victim's hands.  There was nothing found on or about the victim's person.  And the fist fight just prior, there was no indication from numerous individuals that the victim was armed at any time during that.

Q:    Do you recall the defendant's testimony at trial?

A:    Yes.

. . .

Q:    And do you recall what he said about the victim being armed?

A:    That he was not.  And I think I took - - -I think the obvious tenor in the courtroom was, you know, did the victim have a weapon.  And I think I even

27

was specific, was there a firearm?  No.  Did he - - I can't remember the word I used - - did he - - something about, did he display it.  No, I didn't say display.  I think I would have said, whip out - - I think I said, did he whip out a knife.[14]

Q:     Okay.

A:     And Mr. Stevens said no, because the point that I said knife was just like I was, in my mind, covering any gamut of any possible weapon.

Q:     Right.

A:     There was no indication a knife was involved.

(Dkt. #10, Ex. 24, pp. 109-11).

Petitioner fails to establish an ineffective assistance claim.  Even assuming, *arguendo*, that counsel performed deficiently by not investigating Perkins or calling him as a witness, Petitioner fails to demonstrate resulting prejudice.  Several eyewitnesses testified at trial that the victim was not armed at the time of the shooting and no weapon was found on or near the

---

[14]  The prosecutor asked Petitioner on cross-examination:

Q:     When you shot [the victim] he did not have a weapon, did he?

A:     I don't know what he had.

Q:     When you shot [the victim] he did not threaten you with a weapon, did he?

A:     He didn't threaten me with a weapon, but he - -

Q:     Can you answer my questions?

A:     No.

Q:     He never whipped out a knife?

A:     No.

(Dkt. #10, Ex. 5, Vol. VI, p. 825).

victim at the crime scene.  (Dkt. #10, Ex. 5, Vol. II, pp. 46-47, 106, 136; Vol. III, pp. 215; Vol. V, p. 564-65, 577).  Several witnesses also testified that Petitioner neither warned the victim before he shot him nor engaged in a physical confrontation with the victim immediately before the shooting.  (Dkt. #10, Ex. 5, Vol. II, pp. 103, 140; Vol. V, p. 565, 567-68).  Petitioner himself testified at trial that when he shot the victim, the victim had not threatened him with a weapon and that the victim had not pulled out a knife or displayed a gun.  (Dkt. #10, Ex. 5, Vol. VI, p. 825).  As counsel testified at the evidentiary hearing, even if he had interviewed Perkins and Perkins had told him the version of events that Perkins testified to at the evidentiary hearing, counsel still would not have presented him as a witness at trial because his testimony conflicted with Petitioner's version of events.  Petitioner fails to show that further investigation by counsel would have resulted in the discovery of a gun and a knife allegedly wielded by the victim and his friends immediately before the shooting. No gun or knife was recovered from the victim or found at the crime scene.  Consequently, Perkins's proposed testimony on this subject would not have supported Petitioner's self-defense theory.

The state post-conviction court determined that Perkins lacked credibility.  A federal court must defer to the state court's findings of fact.  28 U.S.C.§ 2254(e)(1).  The state post-conviction court's credibility determination is presumed correct.  *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct unless [the petitioner] rebuts the presumption

by clear and convincing evidence."); *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), *cert. denied*, 513 U.S. 1161 (1995). Petitioner fails to overcome the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See also Rice v. Collins*, 546 U.S. 333, 338 (2006) (when witness credibility is at issue, federal habeas relief may only be granted if it was unreasonable, in light of the evidence presented, for the state court to discredit the testimony of the witness in question). Petitioner fails to meet his burden of proving that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his ineffective assistance claims. *See* 28 U.S.C. § 2254(d). Grounds two and four warrant no relief.

**Ground Six**

Petitioner contends that "[t]he circumstantial evidence of Petitioner's state of mind was no more consistent with first-degree murder than with second-degree murder." (Dkt. #1, p. 17). He argues that the prosecution's theory of the case "simply didn't make sense," and that "the evidence is far more susceptible of interpretation showing a lesser degree of culpability." The state district court of appeal rejected this claim on direct appeal. To the extent that Petitioner relies upon his state law arguments presented on direct appeal to support this ground, he cannot obtain relief because he failed to argue a violation of a federal constitutional right. 28 U.S.C. § 2254(a). To the extent that Petitioner's claim, liberally

construed, asserts a federal due process violation based upon the sufficiency of the evidence, the claim warrants no relief.

In evaluating such a sufficiency of the evidence claim, Florida courts assess whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt. *Simmons v. State*, 934 So.2d 1100, 1111 (Fla. 2006); *Lynch v. State*, 293 So.2d 44 (Fla. 1974). This standard is the same as the federal standard for evaluating a due process challenge based on the sufficiency of the evidence. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (emphasis in original).

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship*, 397 U.S. 358, 364 (1970). In a challenge to a state criminal conviction brought pursuant to Section 2254, a petitioner is entitled to habeas relief on a claim of insufficient evidence "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 324. "[T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt.'" *Jackson*

31

*v. Virginia*, 443 U.S. at 318-19 (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966) (emphasis in original)).

Sufficiency of the evidence claims are governed by the substantive elements of a criminal offense as defined by state law.  *Jackson v. Virginia*, 443 U.S. at n. 16.  "Although each element of the offense must be established beyond a reasonable doubt, *see Bishop v. Kelso*, 914 F.2d 1468, 1470 (11th Cir. 1990) (citing *Jackson [v. Virginia]*, 443 U.S. at 316), the State is not required to rule out every hypothesis except that of the guilt of the defendant, *see Jackson [v. Virginia]*, 443 U.S. at 326)."  *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001).  If the record contains facts supporting conflicting inferences, the jury is presumed to have resolved those conflicts in favor of the State and against the defendant.  *Johnson v. Alabama*, 256 F.3d at 1172.  In other words, federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and weighing the evidence.  *Johnson v. Alabama*, 256 F.3d at 1172 (citing *Jackson v. Virginia*, 443 U.S. at 326).

The state trial judge instructed the jury that to find Petitioner guilty of first-degree murder, the prosecution had to prove three elements beyond a reasonable doubt:  (1) that [the victim] is dead, (2) that the death was caused by the criminal act or agency of [Petitioner], and (3) that there was a premeditated killing of [the victim].  (Dkt. #10, Ex, 5, Vol. VII, p. 1092).  *See also* Fla. Std. Jury Inst. 7.2; Fla. Stat. § 782.04(1)(a).

Premeditation is "a fully formed conscious purpose to kill that may be formed in a moment and need only exist for such time as will allow the accused to be conscious of the

nature of the act he is about to commit and the probable result of the act." *Asay v. State*, 580 So. 2d 610, 612 (Fla. 1991). "Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted." *Green v. State*, 715 So. 2d 940, 944 (Fla. 1998) (quoting *Holton v. State*, 573 So. 2d 284, 289 (Fla. 1990)). Whether premeditation exists is a question of fact for the jury to decide but the jury is not required to "believe the defendant's version of the facts when the State has produced conflicting evidence." *Spencer v. State*, 645 So. 2d 377, 381 (Fla. 1994).

There was no question at trial that Petitioner fatally shot the victim. The evidence, taken in the light most favorable to the prosecution, showed that the victim was angry at Petitioner for allegedly introducing the victim's girlfriend to another man. The victim broke the windows in Petitioner's car and put a pole through the windshield. Upon hearing about the damage to the car, Petitioner, who was staying at a hotel with his girlfriend, returned to his neighborhood where he was confronted by the victim who struck Petitioner in the face. During the fight the victim told Petitioner that he was going "to get" Petitioner. After the fight was over, Petitioner found his car and saw the damage the victim had done to it. Petitioner became angry and, referring to the victim, stated to a friend,[15] "I'm going to kill this

---

[15] Petitioner made this statement to John Newsome, a prosecution witness. Petitioner's damaged car was parked outside Newsome's house.

33

[expletive]." (Dkt. #10, Ex. 5, Vol. II, pp. 134-35, 146; Vol. VI, pp. 848-49). Petitioner said he was tired of people "messing" with him and that he would kill the next person that put their hands on him. (Dkt. #10, Ex. 5, Vol. II, p. 176). Petitioner decided to arm himself and traded his damaged car for a gun. Shortly after getting the gun, Petitioner encountered the victim. Upon seeing the gun, the victim attempted to run away from Petitioner. (Dkt. #10, Ex. 5, Vol. II, pp. 102-03, 138, 165-66). Petitioner issued no warning to the victim before he began shooting him. (Dkt. #10, Ex. 5, Vol. II, pp. 107, 140). The victim did not verbally or physically threaten Petitioner at the time Petitioner shot him. (Dkt. #10, Ex. 5, Vol. II, p. 106). Petitioner's first shot hit the victim in the leg and the victim fell to the ground.[16] (Dkt. #10, Ex. 5, Vol. II, p. 103). The unarmed victim put his hands up and asked Petitioner not to shoot him. (Dkt. #10, Ex. 5, Vol. II, pp. 104, 106, 115, 136, 141; Vol. III, pp. 215, 292, 301). After the first shot Petitioner hesitated for a couple of seconds and then pulled the trigger four more times. (Dkt. #10, Ex. 5, Vol. II, pp. 103-04; Vol. V, p. 573).

Viewing the evidence against Petitioner in the light most favorable to the prosecution and using the objective reasonableness test, a rational trier of fact could find that the evidence established the essential elements of first-degree murder, including premeditation, beyond a reasonable doubt. The affirmance on direct appeal of Petitioner's conviction was neither an unreasonable application of controlling Supreme Court precedent nor an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1), (2).

---

[16] The bullet broke the victim's femur. (Dkt. #10, Ex. 5, Vol. IV, p. 463-64).

**Ground Twelve**

Petitioner contends that the state trial judge abridged Petitioner's right to cross-examine witness Robert Newsome by advising counsel before Newsome testified:

> [Newsome] is not in a good mood and I am not going to let you bait him or intentionally upset him in order to get him to sound off in front of this jury so that you can impeach him by his actions and not by his comments.

> You can ask him questions, but I'm not going to let you intentionally antagonize him in order to get him to erupt in front of this jury.

(Dkt. #10, Ex. 5, Vol. V, pp. 585-86).  Counsel stated to the judge that he had "no control over how this witness may act," to which the judge replied, "No, but you have control over what your questions are, I mean, you certainly know what his temperament is."  (Dkt. #10, Ex. 5, Vol. V, p. 586).  Petitioner claims that the trial judge's comments resulted in a "chilling effect" on counsel's cross-examination of Newsome, thereby violating Petitioner's Sixth Amendment right to confrontation.  The state appellate court rejected this claim on direct appeal.

"[T]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'"  *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987) (quoting *Delaware v. Fernsterer*, 474 U.S. 15, 20 (1987)).

> A limitation on cross-examination can violate the Sixth Amendment right to confrontation if it prevents the defendant from showing that a witness is biased:  [A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of

35

> the witness, and thereby "to expose to the jury that facts from which
> jurors . . . could appropriately draw inferences relating to the reliability of the
> witness."

*De Lisi v. Crosby*, 402 F.3d 1294, 1300-01 (11th Cir. 2005) (quoting *Delaware v. Arsdall*,

475 U.S. 673, 680 (1986)).   "Not every limitation on cross-examination violates the

Confrontation Clause.  'The Sixth Amendment does not require unlimited inquiry into the

potential bias of a witness.  As long as sufficient information is elicited from the witness

from which the jury can adequately assess possible motive or bias, the Sixth Amendment is

satisfied.'"  *De Lisi v. Crosby*, 402 F.3d at 1301 (citing *United States v. Lankford*, 955 F.2d

1549, n. 10 (11th Cir. 1992) (internal citations and quotation marks omitted)).  A trial judge

may limit cross-examination, without violating a defendant's Sixth Amendment rights, under

the following circumstances:

> (1)    the jury, through the cross-examination permitted, was exposed to facts
> sufficient for it to draw inferences relating to the reliability of the witness; and
>
> (2)    the cross-examination conducted by defense counsel enabled him to make a
> record from which he could argue why the witness might have been biased.

*United States v. Calle*, 822 F.2d 1016, 1020 (11th Cir. 1987).

The trial judge afforded Petitioner's counsel ample opportunity to cross-examine

Newsome and the record shows that the trial judge did not unreasonably limit or impede

counsel's cross-examination.  (Dkt. #10, Ex. 5, Vol. V, pp. 587-611).  Newsome, an

eyewitness to the shooting, testified on direct examination about how Petitioner approached

the victim immediately before the shooting, described where he, the victim, and Petitioner

were standing in relation to one another by using photographs shown to him by the prosecutor, and testified about the position of the victim's body after the shooting. (Dkt. #10, Ex. 5, Vol. V, pp. 554-77).    After Newsome's direct examination but before cross-examination, counsel argued to the court that he should be allowed to impeach Newsome's testimony about the location of Petitioner and the victim before the shooting with a diagram that Newsome marked during his prior deposition.  (Dkt. #10, Ex. 5, Vol. V, pp. 577-86).  Counsel thoroughly questioned Newsome about the diagram on cross-examination and highlighted Newsome's reluctance to be a witness in the case.[17]    Counsel's cross-examination sufficiently exposed relevant facts from which the jury could evaluate Newsome's credibility.[18]  The Sixth Amendment Confrontation Clause "is satisfied where sufficient information is elicited from the witness from which the jury can adequately gauge the witnesses' [sic] credibility." *United States v. Burke*, 738 F.2d 1225, 1227 (11th Cir. 1984) (citing *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974)).

Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting this claim on direct appeal.  Ground twelve warrants no federal habeas corpus relief.  *See* 28 U.S.C. § 2254(d)(1), (2).

---

[17] Newsome testified on direct examination both that, before he was subpoenaed to appear at trial, he did not make any statement to authorities about the shooting because he did not want to be involved in the case and that he did not want to be at the trial.  (Dkt. #10, Ex. 5, Vol. V, p. 559).

[18] Counsel in his closing argument asserted that Newsome was "totally unworthy of belief" and that Newsome had "to be disbelieved" based upon his testimony at trial.  (Dkt. #10, Ex. 5, Vol. VI, pp. 1030-31).

**Ground Sixteen**

Petitioner contends that the trial judge erred by denying Petitioner's pre-trial motion for continuance.  Petitioner claims that the denial precluded counsel from adequately preparing for trial.

Petitioner challenged on direct appeal the denial of the continuance.  In his appellate brief Petitioner cited *White v. Ragen*, 324 U.S. 760 (1945), and argued that "it is a denial of the right to a fair trial to force a defendant to trial with such expedition as to deprive him of effective aid and assistance of counsel."  (Dkt. #10, Ex. 8, p. 69).  To the extent that the instant petition, liberally construed, attempts to assert the same argument presented in the appellate brief, Petitioner arguably presents a federal claim based on the denial of the continuance.  Nevertheless, Petitioner is not entitled to relief.

"[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for a delay' violates the right to the assistance of counsel."  *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).  "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel . . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process."  *Ungar v. Sarafite*, 376 U.S. at 589.  To establish that a denial of a continuance amounts to reversible error, a defendant must show that the denial caused "specific substantial

prejudice." *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1326 (11th Cir. 2002) (citing *United States v. Verderame*, 51 F.3d 249, 251 (11th Cir. 1995); *Fennie v. State*, 648 So. 2d 95, 97-98 (Fla. 1994)).

Counsel was appointed to represent Petitioner in July 1999 and trial was scheduled to begin on September 28, 1999.  (Dkt. #10, Ex. 2).  The trial judge granted counsel's first request for continuance and the trial was rescheduled to November 16, 1999.  (Dkt. #10, Ex. 3).  On November 12, 1999, counsel again requested a continuance to further prepare for trial.[19]  The trial judge rejected the request and jury selection commenced on November 16, 1999.  On the second day of trial, November 18, 1999, the trial judge continued the case because of a family emergency of one of the jurors.  Trial re-commenced on December 7, 1999, allowing counsel over two weeks of additional time to prepare for trial.

Petitioner fails to suggest how a continuance would have changed the outcome of the trial.  Petitioner does not argue that counsel was unable to complete additional preparation during the two-week break in the trial or that, at the conclusion of the break, counsel was unprepared for trial to re-commence.  He offers no evidence or legal authority to support a finding that the trial judge erred by denying counsel's second request for a continuance or that the denial caused him specific substantial prejudice.  *Van Poyck v. Fla. Dep't of Corr.*,

---

[19] Counsel was appointed to represent Petitioner on July 29, 1999, and trial was originally scheduled to begin on September 28, 1999.  (Dkt. #10, Ex. 2).  Counsel moved for a continuance.  The trial judge granted counsel's motion and continued the trial until November 16, 1999.  (Dkt. #10, Ex. 3).  Counsel moved for a second continuance and argued at a November 12, 1999, hearing on the motion that he needed time to review additional discovery presented to him by the prosecution that day.  (Dkt. #10, Ex. 4).

290 F.3d at 1326.  Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting this claim on direct appeal.  *See* 28 U.S.C. § 2254(d).

### Evidentiary hearing

This case warrants no evidentiary hearing because "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief."  *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2003).

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  *Id.*  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner has not made the requisite showing in these

circumstances.  Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

It is therefore ORDERED AND ADJUDGED that:

1.     Petitioner's petition for the writ of habeas corpus (Dkt. #1) is DENIED.

2.     The Clerk is to enter judgment for Respondent and close this case.

**DONE** and **ORDERED** in Tampa, Florida on November 1, 2011.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

JSM:kw

41